**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
In the Matter of the Complaint

        of

RICHARD J. LEIGH, as Owner of the M/Y
SILVER BULLET for Exoneration from or
Limitation of Liability,

        Petitioner.
---------------------------------------------------------X
In the Matter of The Complaint

        of

RICHARD PATRICK LEIGH, as Owner of the
M/Y SILVER BULLET for Exoneration from or
Limitation of Liability,

        Petitioner.
---------------------------------------------------------X
MICHELE WEIL, as Administratrix of the Estate
of CHRISTOPHER MANNINO,

        Third-Party Plaintiff,

    v.

BRIAN ANDRESKI, WARREN ANDRESKI,
CAROL ANDRESKI, B.C.M FISH LTD. d/b/a
MATTHEW'S SEAFOOD HOUSE, JENNIFER
ANN MORITZ, SULLOT CORP. d/b/a
ALBATROSS, and JAMES S. MALLOTT,

        Third-Party Defendants.
---------------------------------------------------------X

**DECISION AND ORDER**
13-cv-294 (ADS)(AKT)

**APPEARANCES:**

**Leder Law Group, P.C.**
*Attorneys for the Petitioners Richard Patrick Leigh and Richard J. Leigh*
401 Washington Avenue, Suite 600
Baltimore, Maryland 21204
   By: Steven E. Leder, Esq.

1

    Julie F. Maloney, Esq., of Counsel

**Law Office of Epstein, Gialleonardo & Frankini**
*Attorneys for the Petitioners Richard Patrick Leigh and Richard J. Leigh*
330 Old Country Rd., Suite 200
Mineola, New York, 11501
    By:  Claude N. Grammatico, Esq., of Counsel

**Sullivan Papain Block McGrath & Cannavo**
*Attorneys for the Third-Party Plaintiff Michele Weil as Administratrix of the Estate of Christopher Maninno*
1140 Franklin Avenue, Suite 200
Garden City, New York 11530
    By:  Alison D. Metzler, Esq., of Counsel

**Smith Mazure Director Wilkins Young & Yagerman, P.C.**
*Attorneys for the Third Party Defendants B.C.M. Fish Ltd. and Jennifer Ann Moritz*
111 John Street
20th floor
New York, NY 10038
    By:  Catherine Jeanne Poissant, Esq., of Counsel

**Lewis Johs Avallone Aviles LLP**
*Attorneys for the Third-Party Defendants Carol Andreski and Warren Andreski*
1 Ca Plaza, Suite 225
Islandia, NY 11749
    By:  Bryan F. Lewis, Esq.,
        Annemarie Susan Jones, Esq., of Counsel

**Lewis Brisbois Bisgaard & Smith LLP**
*Attorneys for Third Party Defendants Sullot Corp. and James Mallot*
77 Water Street, 21st Floor
New York, NY 10005
    By:  Kevin Michael Zimmerman, Esq.
        Joshua R. Hecker, Esq., of Counsel

**Brian Andreski,** *Pro se*
DIN #13A2477
Franklin Correctional Facility
62 Bare Hill Road
P.O. Box 10
Malone, New York 12953-0010

**SPATT, District Judge**.

On January 17, 2013, the Petitioner Richard J. Leigh, as owner of the M/Y Silver Bullet (Official No. 565053), a 34' Hatteras Sports Fisherman Boat, commenced an action, case no. 13-cv-294, pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.* (the "Limitation Act") and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, arising from a boat accident (the "accident") involving the M/Y Silver Bullet.

The accident occurred on June 23, 2012 at approximately 4:50 a.m. in the Great South Bay near West Islip, New York when a 24' Douglas Skater driven by Brian Andreski collided with the M/Y Silver Bullet, killing Christopher Mannino, a passenger on the M/Y Silver Bullet. At the time, the M/Y Silver Bullet was being operated by Richard Patrick Leigh, the son of Richard J. Leigh. Following the accident, Brian Andreski pleaded guilty to aggravated vehicular homicide and vehicular manslaughter in the second degree. Brian Andreski is currently incarcerated.

According to the complaint, the underlying incident occurred without the privity or knowledge of Richard J. Leigh and was not caused by or contributed to by any fault or negligence or unseaworthiness on the part of the M/Y Silver Bullet or those in charge of her.

On March 4, 2013, Michele Weil, as Administratrix of the Estate of Christopher Mannino (the "Estate"), filed a wrongful death action in Supreme Court, Suffolk County. Both Richard J. Leigh and Richard Patrick Leigh were named as defendants in that state court action.

Also named as defendants in the state court action were B.C.M. Fish Ltd. d/b/a Matthew's Seafood House ("B.C.M") and its owner, Jennifer Ann Moritz ("Moritz"). In this regard, the Estate alleged that B.C.M. and Moritz were liable under the New York State Dram

Shop Act, General Obligations Law §§ 11-100, *et seq.* because, on the night of the accident, bartenders at B.C.M. served a visibly intoxicated Brian Andreski with alcoholic beverages.

In addition, the state court action also named as defendants Brian Andreski; Warren and Carol Andresk, Brian Andreski's parents and the owners of the Douglas Skater; and Sullot Corp. d/b/a/ Albatross ("Sullot"), another bar, and its owner, James S. Mallott ("Mallott"), which allegedly served alcohol to Brian Andreski the night of the accident.

On March 18, 2013, this Court entered an amended order restraining any suits, including the state action, against Richard J. Leigh; approving Richard J. Leigh's Ad Interim Stipulation for Value of $11,771.00, with interest and costs; and directing the issuance of a notice that claims arising out of the accident must be filed by May 20, 2013. As directed by this Court, notice of the action was published in *Newsday* and mailed to all known and potential claimants.

On May 16, 2013, the Estate filed a claim in this limitation proceeding against Richard J. Leigh. The Estate claims damages in the amount of $5 million for pain and suffering sustained by the decedent and $20 million for pecuniary loss to the decedent's heirs.

On May 31, 2013, the Court entered an order noting the defaults of all persons who had not appeared and filed claims against Richard J. Leigh.

On July 19, 2013, Richard Patrick Leigh filed a separate Limitation Action, case no. 13-cv-4119, seeking exoneration from or limitation of liability as owner *pro hac vice* in possession, command, and control of the M/Y Silver Bullet. On August 2, 2013, this Court entered an Order restraining suits against Richard Patrick Leigh; approving Richard Patrick Leigh's Ad Interim Stipulation for Value of $11,771.00 with interest and costs; and directing the issuance of notice that claims arising out of the accident be filed September 19, 2013.

On September 16, 2013, Richard J. Leigh and Richard Patrick Leigh (collectively the "Petitioners") moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 42(a) to consolidate the two limitation cases. On October 18, 2013, the Court "so-ordered" a stipulation entered into by the Petitioners, the Estate, and then non-parties B.C.M. and Moritz, consolidating the limitation cases for all purposes. The Court directed the parties to proceed under the case number 13-cv-294, and directed the Clerk of the Court to close the case number, 13-cv-4119.

On October 22, 2013, B.C.M. and Moritz moved pursuant to Fed. R. Civ. P. 24(a)(2), or, in the alternative, Fed. R. Civ. P. 24(b)(1)(B), to intervene in this consolidated action. In this regard, B.C.M. and Moritz asserted that they did not become aware of these actions until August 2013, as they were not among those parties who received notice of the actions by mail.

On October 31, 2013, the Petitioners moved, pursuant to Fed. R. Civ. P. 42(b), to bifurcate the consolidated action for all purposes, including discovery, with the "phase 1" of the case limited to the determination, by the Court, of (1) what acts of negligence caused the accident; and (2) whether the Petitioners had knowledge or privity of the events that caused the accident. The nature of "phase 2" would depend on whether limitation was granted or denied. If liability were limited, the court would determine the validity of the Estate's claim and distribute the limited fund to the Estate. If limitation was denied, the Estate could elect to proceed before a jury in federal or state court on the remaining issues, including the degree of fault and damages. B.C.M. and Moritz opposed bifurcation.

On December 30, 2013, after the motion to bifurcate was fully briefed, the Estate commenced a third-party action against Brian Andreski, Warren Andreski, Carol Andreski (collectively the "Andreskis"), B.C.M, Moritz, Sullot, and Mallott.

On January 17, 2014, the Court granted as unopposed the motion to intervene by B.C.M.

5

and Moritz.

On January 29, 2014, B.C.M. and Moritz answered the third-party complaint and cross-claimed against the Andreskis, the Petitioners, Sullot, and Mallot, alleging that the accident was caused, in part, by the negligent acts and/or commissions of those third-party defendants.

On February 24, 2014, the Petitioners answered the third-party complaint. On February 25, 2014, the Petitioners filed cross claims for contribution and indemnification against the Andreskis, B.C.M., Moritz, Sullot, and Mallot.

On March 5, 2014, Sullot and Mallot answered the third-party complaint and filed cross claims for contribution and indemnification against the Petitioners, the Andreskis, B.C.M., and Moritz.

Also, on March 5, 2014, Brian Andreski, then represented by counsel, answered the third-party complaint.

On March 19, 2014, Carol Andreski and Warren Andreski filed an amended answer to the third-party complaint with cross-claims against the Petitioners, B.C.M, Moritz, Sullot, and Mallot.

## I. DISCUSSION

The Limitation Act provides that, under certain circumstances, the owner of a vessel is entitled to limit his liability for damage or injury occurring on the vessel to the value of the vessel. See 46 U.S.C. § 30505. To determine if limitation of liability is appropriate, the owner of the vessel must bring a civil action in federal district court for limitation of liability within six months after a claimant gives the owner written notice of a claim. Id. § 30511(a); Fed. R. Civ. P. Supp. R. F(1). The limitation of liability complaint must state the facts on which the right to limitation is asserted, as well as any facts that the court would need to determine the amount of

limited liability. Fed. R. Civ. P. Supp. R. F(2). Upon bringing the limitation action, at the owner's option, the owner must either deposit with the court or transfer to a court-appointed trustee an amount equal to the owner's interest in the vessel and an amount fixed by the court. See 46 U.S.C. § 30511(b). Once the owner has brought the limitation action and complied with subsection (b), all claims and proceedings against the owner related to the matter in question must cease. Id. § 30511(c).

Thereafter, the court must issue notice to all persons asserting claims with respect to which the complaint seeks a limitation. Fed. R. Civ. P. Supp. R. F(4). The claimants are required to file any claims against the vessel owner in the limitation action. See In re Petition of Atlantis Fishing Fleet Corp., No. CV–01–8263 (SJF)(ASC), 2004 WL 3704912, at *2 (E.D.N.Y. Mar. 22, 2004).

Thereafter, the federal court, sitting in admiralty without a jury, conducts a proceeding known as a *concursus*. Id. During this proceeding, the court determines whether there was negligence, whether the negligence was without the privity and knowledge of the owner and, if limitation is granted, how the limitation fund should be disbursed. Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 755 (2d Cir. 1988). Limitation of liability is only appropriate if the injury was "done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30505(b).

"Two exceptions exist to the admiralty court's exclusive jurisdiction, which render a *concursus* unnecessary and permit claimants to proceed with their common law claims in other forums: (1) where there is a single claimant, who stipulates that the federal court retains exclusive jurisdiction over limitation of liability issues, that his or her claim does not exceed the limitation fund, and that he or she waives any defense of res judicata with respect to limitation of

liability; and (2) where the aggregate of the claims does not exceed the value of the limitation fund, i.e. the value of the vessel and its cargo." In re Petition of Atlantis Fishing Fleet Corp., 2004 WL 3704912, at *2.

Neither exception applies here because it appears there are multiple claims and the aggregate value of the claims exceed the limitation fund. Accordingly, it is for the Court to determine the issues of liability and limitation on the part of the Petitioners. See e.g. Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 454, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001) (stating that if the vessel owner's right to limitation will not be adequately protected, i.e. where multiple claimants do not agree on appropriate stipulations or there is uncertainty concerning the adequacy of the fund, the court may adjudicate the merits of the claims and decide the issues of liability and limitation); Dammers, 836 F.2d at 757 (holding that as long as there is a potential set of circumstances in which an owner could be held liable in excess of the limitation fund, a *concursus* is necessary).

The provisions of the Limitation Act are in some tension with what is known as the "saving to suitors" clause. See 28 U.S.C. § 1333(1). This statute states that the "district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Id. This statute thereby grants state courts *in personam* jurisdiction, concurrent with admiralty courts. Lewis, 531 U.S. at 445, 121 S. Ct. 993, 148 L. Ed. 2d 931. "Thus, tension exists because the "saving to suitors" clause gives claimants the right to a choice of remedies, while the Limitation Act gives vessel owners the right to seek limitation of liability in federal court. Therefore, by exercising its equitable powers in claims for limited liability, the federal district court necessarily denies the claimants their right to pursue common law claims

8

before a jury in state court." In re Longshore Sailing Sch., Inc., 3:09-CV-1176 (CFD), 2010 WL 326210, at *2 (D. Conn. Jan. 19, 2010).

As stated in In re Bergeron Marine Serv., Inc., No. CIV.A. 93–1845 (CS), 1994 WL 236374, at *1 (E.D. La. May 24, 1994):

> [b]ifurcation has proved to be an effective tool to help ease the conflict between the apparent exclusive jurisdiction vested in this admiralty court by the Limitation Act and the presumption in favor of jury trials and common law remedies embodied in the "savings to suitors" clause of 28 U.S.C. § 1333. In essence, this Court will determine both negligence of petitioner and its right to limitation/exoneration in Phase I of the instant proceedings keeping its stay in effect, which will satisfy the Limitation Act's requirements. Should this Court determine that petitioner is not entitled to exoneration and/or limitation of liability, individual claimants submit that Court's jurisdiction will then be at an end, and they should be free to have a state court, or if applicable a state jury, determine the fault of additional parties, the relative degrees of fault, and damages. Thus, the congressional purposes behind the "savings to suitors" clause will be somewhat fulfilled.
>
> It can hardly be argued that any judicial inefficiency will result from the bifurcation of this matter. As to the determination of the existence of negligence on the part of the petitioner, if any, this Court's finding in that regard would have res judicata effect. Any subsequent proceeding, whether in this Court or in state court would be focused on making the determinations as to whether any additional parties are at fault, the relative degrees of fault of the tort feasors, and damages.

Id. In this regard, federal courts routinely order separate trials so that the limitation claims may be decided first and the claimants can decide where to litigate the remaining issues. In re Suard Barge Service, Inc., CIV. A. 96–3185, 1997 WL 358128, at *2 (E.D. La. June 26, 1997) (finding that bifurcation, whereby the court would determine all limitation issues, and, if limitation was denied, would free the claimants to proceed in state court before a jury to determine the relative degree of fault and damages, "ma[de] perfect sense," and would not result in judicial inefficiency); In re Complaint of Hill, 935 F. Supp. 710, 711-712 (E.D.N.C. 1996)(holding that the court would hear and determine limitation issues first and, if limitation is denied, would lift

9

the injunction and permit the remaining issues to be determined by a jury in state court); In re Complaint of Sheen, 709 F. Supp. 1123, 1126, n. 2 (S.D. Fla. 1989)(stating that the court decided to bifurcate the trial, with the court first determining the limitations issues and, if limitation is denied, lifting its stay and permitting claimants to proceed in the forum of their choice, to help ease the conflict between the exclusive admiralty jurisdiction of the federal court in limitation actions and the savings to suitors clause).

In this case, there is no dispute over which issues will be decided by the Court and which will be submitted to the jury – that is, the Petitioners do not deny that the Estate enjoys a right to a jury trial, whether in federal or state court, on their New York State claims. However, the Petitioners contend that exercise of that right in this consolidated action should be preceded by the limitation determinations. According to the Petitioners, bifurcation in this way will promote efficiency, avoid the risk of inconsistent judgments, and obviate the need for duplicative discovery. The Court disagrees.

The Court notes that at the time the Petitioners moved to bifurcate, the Andreskis, Sullot, and Mallott were not parties to this action. Furthermore, at that time, the only claim B.C.M and Moritz brought sounded in contribution against the Petitioners in the event B.C.M. and Moritz were found liable to the Estate. However, as the Estate had not brought a primary claim against B.C.M. and Moritz, this Court was not presented with any contribution claim by B.C.M and Moritz.

Indeed, at that point, the Estate's only claim in this action was against the Petitioners. Therefore, any discovery in this action concerning damages and/or the fault of the then non-party bars and the Andreskis would need to be repeated in the state court action.

However, subsequent to the filing of the Petitioners' motion to bifurcate, and after that motion was fully briefed, the Estate filed a third-party complaint raising New York State claims against the Petitioners, B.C.M and Moritz, the Andreskis, Sullot, and Mallot. Accordingly, the circumstances supporting the motion for bifurcation at the time it was made – that no viable claims were pending before this Court beyond the Petitioners' limitation claims and, therefore, any discovery about damages or the fault of the then non-parties would not be efficient – no longer exist. In fact, because the state action is stayed pending a determination on the Petitioners' limitation claims, a delay in adjudicating the non-limitation claims pending before this Court would not promote judicial economy.

Therefore, in lieu of bifurcation, the Court adopts the alternative approach employed by the Southern District of New York in Great Lakes Dredge & Dock Company, 895 F. Supp. 604, 608 (S.D.N.Y. 1995) and Complaint of Poling Transp. Corp., 776 F. Supp. 779, 786 (S.D.N.Y. 1991). In those cases, the court empaneled a jury at the outset of the trial; determined the limitation issues at a bench trial; and then submitted any remaining issues to the jury for determination. "This [is] not a novel resolution of the conflict." Hygrade Operators, Inc. v. Clifford, 96 CIV 0065 (FM), 2000 WL 174928, at *1 (S.D.N.Y. Feb. 15, 2000)(citing Great Lakes); see also Red Star Towing & Transp. Co. v. The "Ming Giant", 552 F. Supp. 367, 371–72 (S.D.N.Y. 1982)(consolidating the limitation hearing with the trial).

"Moreover, embarking on this proceeding without a jury in the interest of maintaining aesthetic purity, makes no sense. Due to the multi-party nature of this action and complicated questions involving, among other things, causation, a full-blown trial will be necessary simply to resolve the limitation issues of negligence and privity or knowledge – a trial that would necessarily be duplicated in state [or federal] court if limitation is denied . . . ." Poling, 776 F.

11

Supp. at 786; see also Great Lakes, 895 F. Supp. at 615 ("In a multi-party action such as this one, the court will have to conduct an extensive proceeding in order to determine whether either or both defendants are entitled exoneration or limitation. The evidence presented by the parties on the limitation issues will in most respects be the same as the evidence presented on the claims filed by the [claimants]"); compare In re Petition of Atlantis Fishing Fleet Corp., 2004 WL 3704912, at *4 ("[T]his court finds that under the circumstances of this case, the interest of judicial economy is better served by bifurcating the trial of this matter and, thus, declines to follow the approach set forth by the Southern District in Great Lakes and Poling.").

Under these circumstances, "judicial economy concerns suggest that [] the [C]ourt [hold the] proceedings on the limitation issues and the jury trial on the claims simultaneously." Great Lakes, 895 F. Supp. at 615. "The most efficient course of action, therefore, is to empanel a jury and conduct simultaneous trials of the limitation issues and the claims. At the close of trial, the court will decide whether limitation is appropriate for either [Petitioner] and the jury will render a verdict on the remaining issues." Id. (footnote omitted).

As a final matter, the Court notes that, if it denies limitation, it may decline to exercise supplemental jurisdiction over the New York State claims. Heckmann v. Town of Hempstead, 10-CV-5455 (SJF)(GRB), 2013 WL 1345250, at *2 (E.D.N.Y. Mar. 27, 2013). The Estate did not plead an alternative basis for subject matter jurisdiction, such as diversity jurisdiction. However, the Court may permit a party to amend its pleadings at any time and leave should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Furthermore, "[i]t is well settled that, pursuant to 28 U.S.C. § 1653, the court may allow amendments of the pleadings to cure defective allegations of jurisdiction." Johnson Prods. Co. v. M/V La Molinera, 619 F. Supp. 764, 767 (S.D.N.Y. 1985). Accordingly, the Petitioners are granted leave to amend for the

limited purpose of, if possible, pleading an alternative basis for subject matter jurisdiction on their New York State claims.

## II. CONCLUSIONS

For the foregoing reasons, it is ordered that (1) the Estate may amend their third-party complaint to allege facts that, if possible, would indicate subject matter jurisdiction over their New York State claims within fifteen days of the date of this order; (2) the Petitioners' motion to bifurcate their Limitation claims from the rest of the consolidated action is denied; (3) the Court will conduct a bench trial to determine the issues relating to whether Petitioners are entitled to limitation or exoneration, and 4) simultaneously, a jury will be empaneled who will decide the remaining issues, if any.


**SO ORDERED.**
Dated: Central Islip, New York
March 31, 2014

                                                *Arthur D. Spatt*
                                                ARTHUR D. SPATT
                                                United States District Judge